FILED

JUL 25 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

WILLIAM WARREN WIELAND,

              Petitioner - Appellant,

   v.

S. FRANK THOMPSON,

              Respondent - Appellee.

No. 13-35173

D.C. No. 3:10-cv-00059-MA

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, Senior District Judge, Presiding

Argued and Submitted July 11, 2014
Portland, Oregon

Before: PAEZ, WATFORD, and OWENS, Circuit Judges.

The state trial court found sufficient evidence to convict William Warren

Wieland under Oregon Revised Statutes section 163.095(2)(e). *See Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979). Under our doubly deferential review, *see*

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam), and "viewing the

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, we conclude that fair-minded jurists could find the State's evidence sufficient. *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

**1.** A reasonable jury could have found that Wieland committed arson in 1986 based on evidence describing the circumstances of the 1986 fires. The Wieland family suffered through three fires in 1986, the first two of which occurred on Mondays. After the second fire, Cindy Wieland and victim Katherine Kimbrel decided that Kimbrel would sleep in the living room on the next Sunday night in order to catch the arsonist on Monday morning. Cindy and Kimbrel told Wieland, as well as friends of the family, about their plan. But the arsonist thwarted the plan by uncharacteristically setting his next fire—in the locked house—on a Sunday. A reasonable jury could have inferred that Wieland was the arsonist based on Wieland's knowledge of the plan, his access to the locked house, and his motive to commit arson. After each of the fires, Wieland collected a substantial insurance recovery.

Wieland's peculiar reaction to the near-death experience of his wife and children strengthened the inference that Wieland was the arsonist. After the third 1986 fire, Wieland appeared neither grateful to the passersby who helped save his family nor emotional about the serious danger and trauma his family had just

experienced.  A reasonable jury could have found that these atypical reactions implied that Wieland was the arsonist.

**2.**  A reasonable jury could have found that Kimbrel suspected Wieland was the arsonist.  After the third 1986 fire, Kimbrel had a conversation with her pastor that left him with the impression that Kimbrel "knew what was going on but didn't feel like she could talk."  Kimbrel also told longtime friend Julie Raney about the third fire.  In response, Raney said that it seemed like someone was trying to kill the Wielands, but Kimbrel replied that the real targets were Cindy and the Wieland children.  Raney told Kimbrel to "get out of there," but Kimbrel replied that she could not leave Cindy, and Cindy would not leave Wieland.  A reasonable jury could have inferred from this conversation that Kimbrel—by excluding Wieland from the list of victims and suggesting that Cindy would be safer if she left him—signaled that Wieland was the perpetrator.

**3.**  A reasonable jury also could have found that Wieland knew Kimbrel suspected him.  In the days prior to the murder, Kimbrel's demeanor changed. While she was previously energetic and enthusiastic, she became reserved and quiet.  She read scripture about fear in church, and, as one friend said, Kimbrel simply "clammed up."  The jury could have inferred that Wieland, who lived with

Kimbrel at the time, observed the same changes in Kimbrel's demeanor that her friends saw.

Evidence of tension between Kimbrel and Wieland also supported the inference that Wieland knew that Kimbrel suspected him of arson.  After the third fire, the Wielands hired Jeff Starr to help clean and clear the damaged house.  Starr testified that he observed disagreements between Wieland and Kimbrel and that tension marred their relationship.  Starr could not describe the substance of any specific disagreement, but because he observed this tension shortly before the murder and after Kimbrel's stark change in demeanor, the jury could have inferred that Wieland knew Kimbrel suspected him.

**4.**  Finally, viewed in the light most favorable to the prosecution, a reasonable jury could have found that Wieland killed Kimbrel to conceal his arson. First, Wieland had a unique opportunity to commit the murder:  When the murder took place, he and Kimbrel were alone outside the farmhouse.  His daughter was away, his son was occupied watching cartoons in the house, and his wife was asleep.  No employees were on the Wieland property when Kimbrel was murdered. One employee had been scheduled to work at the time during which the murder took place, but Wieland called the night before to tell the employee not to come.

Second, physical evidence discovered at the crime scene implicated Wieland. Police found a footprint matching Wieland's boots close to Kimbrel's body despite Wieland's claim that he had not been within 30 feet of the body. Additionally, trained trackers testified that, based on tracks around Kimbrel's body, the murderer had to have come from the direction of Wieland's house. Taken in the light most favorable to the prosecution, evidence of the boot print and the tracks pointed to Wieland as the killer.

Third, years after Wieland sold the farm, the property's new owner discovered a knife, the likely murder weapon, in Wieland's old barn. The knife had belonged to Kimbrel and was hidden in a pipe in the barn. A reasonable jury could have inferred from testimony about the knife that the murderer was a Wieland-family insider with access to the kitchen. The jury could also have inferred that the same insider stashed the murder weapon in a familiar location on the Wieland farm.

**5.** Because Wieland does not raise a colorable federal claim, we need not address the State's procedural default argument. *See* 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005). We also decline to address Wieland's uncertified issues, as he has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

**AFFIRMED.**